UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DONNA MARIE WILKENS, | : | Case No. 1:11-cv-521 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| DISABILITY BENEFIT PLAN | : | |
| PROCTER & GAMBLE, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR ERISA DISCOVERY**

This civil case is before the Court on Plaintiff's motion for ERISA discovery (Doc. 25) and the parties' responsive memoranda (Docs. 26, 30).

**I.   PROCEDURAL HISTORY AND BACKGROUND FACTS**

Plaintiff is a former employee of Procter & Gamble ("P&G"). (A.R. at 20). As a P&G employee, Plaintiff participated in the Procter & Gamble Disability Benefit Plan ("P&G DBP"). (*Id.*)  The P&G DBP is governed by the Employee Retirement Income Security Act ("ERISA").

On March 30, 2007, Plaintiff applied to P&G DBP for disability. (A.R. at 168). P&G DBP found that Plaintiff was totally disabled and approved her for short-term disability benefits. (A.R. at 154-59).  Her diagnosis was Myalgia and Myositis, Unspecified; Fibromyositis.[1]  (*Id.*)

---

[1] Fibromyositis is chronic inflammation of a muscle with an overgrowth of the connective tissue.

The Social Security Administration ("SSA") determined that Plaintiff was disabled as of December 17, 2007. (Doc. 25, Ex. A). The SSA Notice of Award was issued on March 7, 2010. (*Id.*)

On March 29, 2008, P&G issued a notice stating that Plaintiff was no longer totally disabled and terminated her benefits. (A.R. at 143-45). On October 8, 2008, Plaintiff filed her appeal of the Plan's denial of benefits. (Doc. 18 at ¶ 27). On February 24, 2009, the Plan notified Plaintiff's counsel that there was insufficient objective medical data to indicate a totally disabling condition, and benefits were denied effective March 29, 2008. (A.R. at 471). Subsequently, Plaintiff filed the instant action.

## II. STANDARD OF REVIEW

The general rule is that the district court only considers "evidence that was first presented to the administrator" when it made the original decision to deny benefits. *Wilkins v. Baptist Health Care Sys.*, 150 F.3d 609, 618 (6th Cir. 1998). That evidence is designated as the "administrative record." *Kalish v. Liberty Mut.*, 419 F.3d 501, 508 (6th Cir. 2005). Therefore, generally, discovery is not permitted in an ERISA denial-of-benefits case. *Id.*

## III. ANALYSIS

### A. Conflict of Interest

There are exceptions to the no-discovery rule. First, there is an exception when the plan administrator has a conflict of interest. *Wilkins*, 150 F.3d at 618. A district court

may consider evidence outside the administrative record if "that evidence is offered in support of a procedural challenge to the administrator's decision, such as . . . alleged bias on its part." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (2006). In *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 Fed. Appx. 459 (6th Cir. 2009), the Sixth Circuit explained that the district court has "discretion" on whether to allow discovery in an ERISA case. *Id.* at 467. The "significance of the conflict" of interest depends "on the circumstances of each case." *Id.* at 465. The Sixth Circuit set up the frame of reference on whether a conflict of interest is "more important" or "less important." *Id.* At one end of the spectrum, a "conflict of interest 'should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision.'" *Id.* At the other end, a conflict should prove "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.*

Plaintiff alleges that "P&G DBP has a conflict of interest because P&G DPG is the insurer of P&G benefit plan" and because it "also administers the plan." (Doc. 18 at ¶ 35). Therefore, the "plan administrator, P&G DBP interprets the plan and makes payments under the policy." (*Id*.) P&G argues that Plaintiff is not entitled to discovery because she pled only a "mere allegation" of a conflict of interest, which is insufficient. (Doc. 26 at 5).

The Court disagrees. The Court will reserve its determination of whether a

conflict of interest does in fact exist until after submission of dispositive motions, but Plaintiff has provided significant evidence that she was in fact disabled on March 29, 2008, when P&G found otherwise.  This evidence provides more than a mere allegation that P&G is a biased claims administrator.  For example:

- On October 22, 2007, Dr. Frias provided a notice stating that Plaintiff was unable to work due to "acute exacerbation of her chronic medical problems."  (Doc. 17-1 at ¶ 43).

- On April 10, 2008, Dr. Wu found that "Mrs. Donna Wilkens is 100% disabled and should not be working.  She carries the Dx of MSS resistant, FMS, narcolepsy, hearing loss."  (Doc. 17-1 at ¶ 45).

- On May 9, 2008, Dr. Wooten reported that Plaintiff was not capable of "achieving sustained function enough to maintain gainful employment."  (Doc. 17-1 at ¶ 46).

- On May 10, 2008, Dr. Wu followed up stating that "Mrs. Wilkens will need ongoing medication treatment to even maintain a low level of functioning, doing absolutely minimally at her home."  (Doc. 17-1 at ¶ 47).

- On August 29, 2008, Dr. Mack provided a neuropsychological evaluation and diagnosed severely impaired implicit memory abilities.  (Doc. 17-1 at ¶ 49).

- On September 28, 2008, Dr. Wu opined that "Mrs. Wilkens is suffering from severe impairment in implicit memory abilities and frontal lobe function, constructional dyspraxia and loss of cognitive efficiency.  Given this type of deficit, it is unlikely that she can be reintegrated into the work force easily in any kind of job let alone the kind of job that she previously [had] at P&G."  (Doc. 17-1 at ¶ 50).

Despite this evidence to the contrary, Defendant found that Plaintiff was not disabled.  Additionally, Plaintiff points out several alleged inaccuracies in the report of

Dr. Hawkins which the Defendant relied on in making its non-disability determination.[2] (Doc. 30 at 5-10). This evidence, coupled with the fact that Defendant was both the interpreter and administrator of the Plan, is sufficient to allege more than a "mere allegation" that a conflict of interest/bias exists. Accordingly, Plaintiff is entitled to discovery on the conflict of interest/bias issue.

B.     Due Process

A plaintiff is also entitled to ERISA discovery when the plan administrator does not provide due process. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006). The due process requirements provide that the plan administrator must state a "full and fair review." 29 C.F.R. § 2560.501-1(h)(2). A full and fair review means that the plan administrator shall provide copies of "all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.501-1(h)(2)(iii). When an administrator fails to provide copies of all documents requested by a claimant, it is a violation of 29 C.F.R. § 2560.501-1(h)(2)(iii).

---

[2] For example, Plaintiff alleges that Dr. Hawkins ignored the objective evidence from Dr. Wooten's polysomnography examination. (Doc. 30 at 6). When a plan administrator ignores evidence of physicians who have physically examined a claimant, the plan administrator may be found to be arbitrary and capricious. *Calvert v. First Fin. Ins.*, 409 F.3d 286, 297 (6th Cir. 2005). Additionally, Dr. Hawkins allegedly attacks the credibility of Plaintiff, noting that her claim of "borderline narcolepsy" was "not supported by file evidence." (Doc. 17-1 at ¶ 62). In a conflict-of-interest situation, the Sixth Circuit has held that when a report contains a "critical credibility determination" coupled with "factual inaccuracies," the report is "questionable." *Evans v. Unum*, 434 F.3d 866, 880 (6th Cir. 2006).

On March 29, 2009, Plaintiff asked P&G DBP to provide copies of reports that Dr. Hawkins relied on when he concluded that she was not disabled.[3] (Doc. 25, Ex. B), specifically, the reports of Drs. Tracey Schmidt, Michael Farber, Mark Mahowald, and Mark Schroeder. (*Id.*) P&G DBP admits that it only provided the report of Dr. Farber. (Doc. 22 at ¶ 4). If P&G DBP did not provide all documents that were relevant to the claim, it may have violated 29 C.F.R. § 2560.501-1(h)(2)(iii). Accordingly, Plaintiff has alleged sufficient facts to maintain a due process violation and is therefore entitled to discovery on the issue.

### C. Social Security Award

Next, P&G argues that this Court should not consider the Social Security Disability Notice of Award, because it was issued after the Plan's decision. (Doc. 26 at

---

[3] Defendant argues that this email does not appear in the administrative record, nor does it contain information indicating who received the email at P&G Disability Benefit Plan. (Doc. 26 at 3). The Court finds that these are valid criticisms that need to be flushed out in discovery. Defendant also maintains that the email does not contain a request for the file review of Drs. Schmidt, Mahowald, and Schroeder. The email states, "I would like to have a copy of Dr. Moss's report and/or statement and the doctor's reports and/or statements that are mentioned in your findings . . . The other doctors listed are Tracey schmidt, [sic], Michael Farber, MD, Mark Mahowald, MD and Mark Schroeder, MD." Although the email may be interpreted differently, at this stage in the litigation, the Court construes it as a request for reports/statements made by Drs. Schmidt, Farber, Mahowald, and Schroeder. Finally, Defendant argues that had Plaintiff obtained copies of these reports in March 2009, she would have had no greater benefit in the administrative process, as her appeal had already been denied. (Doc. 26 at 11). While this Court does not necessarily disagree, to the extent that these documents are not part of the Administrative Record, Plaintiff is nonetheless entitled to them.

8).[4]  However, the Social Security Administration found Plaintiff to be fully disabled effective December 17, 2007, before Defendant declared her ineligible for benefits. While the Notice of Award was not issued until March 10, 2010, after Defendant's determination, the Court notes that the decision could in fact contain pertinent medical information which may have been available to Defendant before the date of its decision. Although the Social Security Award post-dates Plaintiff's denial of benefits, the facts relied upon by the Administrative Law Judge in reaching his decision date back to the relevant period.  To the extent that the facts therein pertain to or include statements from doctors involved in the Plan's adjudication, such information may be relevant to potential due process and/or bias issues.  Accordingly, to the extent explained herein, Plaintiff is entitled to make legal arguments regarding the contents of the social security file/award.

### D. Scope of Discovery

Finally, Defendant argues that Plaintiff's proposed discovery requests are not related to the cited procedural challenges.

---

[4] A Social Security Administration determination is "one factor the Court should consider, in the context of the record as a whole" to determine whether the administrator's decision should be reversed.  *Calvert v. First Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005).  In fact, these considerations are especially important when a plan encourages or requires a claimant to apply for Social Security benefits.  *Glenn v. MetLife*, 461 F.3d 660, 668 (2006).  The P&G Plan expressly notes that participants who may be eligible to receive Social Security "must apply for such benefits and inform the Trustees as to the result of such application."  (Doc. 28-1 at Art. VI, ¶ 4).  The plan further states that an "award of Social Security Disability Income benefits will not be binding or determinative of the Trustees decision, but, if the participant provides documents on which such an award was based, that information will be considered with other evidence and given such weight as the Trustees believe it merits under the circumstances."  (*Id.* at ¶ 7(f)).  Moreover, the Plan does not set any time limit on the consideration of a Social Security Determination.  (*Id.*)

The Court finds that Plaintiff is entitled to discovery on "compensation arrangements between the plan administrator" and third-party reviewers, "contractual connections, annual financial payments and statistical data about the number of claims set to the same reviewers and the number of denials resulting therefrom . . . statistical data on the number of times that such reviewers found disability claimants able to work at a sedentary occupation or found that claimants to be not disabled from any occupation." *Mullins v. Prudential Ins. Co.*, 267 F.R.D. 504 (W.D. Ky. 2010). Additionally, Plaintiff is entitled to "incentive, bonus or reward programs," "financial payments annually paid to reviewers," and "documentation of administrative processes designed only to check the accuracy of grants of claims." *Id.*

In sum, Plaintiff is entitled to discovery regarding the alleged lack of due process afforded by the administrator and the alleged conflict-of-interest/bias, but nothing more.

### IV. CONCLUSION

Accordingly, for the reasons stated here, Plaintiff's motion for ERISA discovery (Doc. 25) is **GRANTED**. The Court will enter a Calendar Order (as proposed in the 26(f) Report) by separate Order.

**IT IS SO ORDERED.**

Date:  9/24/12
 *s/ Timothy S. Black*
 Timothy S. Black
 United States District Judge